**Warren DOUDLE, Petitioner,**

v.

**Debra Kaye GAUSE, Respondent.**

**No. 3:03CV484AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

Sept. 11, 2003.

Stephen G Drendall, South Bend, IN, for plaintiff.

Joseph C Lehman, Goshen, IN, for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Judge.

### INTRODUCTION

This case is before the Court on a Petition filed by Petitioner, WARREN DOUDLE, for this Court to enter an Order requiring that his ex-wife, Respondent, DEBRA KAYE GAUSE, return the parties' two children to Australia. The Petition was filed pursuant to the Convention on the Civil Aspects of the International Child Abduction, as adopted and ratified by the United States and further imple-

mented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 *et seq.*

This Court heard oral argument on the petition in South Bend, Indiana on July 16, 2003. Present at the hearing were Respondent, her counsel, and the children. Petitioner's counsel appeared and informed the Court that in light of Petitioner's financial and physical conditions, his appearance at the hearing would be practically impossible.

## FACTS

Petitioner, Respondent and their children all are citizens of Australia.[1] According to the *Decree Nisi* of Dissolution of Marriage rendered by the Family Court of Australia which became "absolute" on May 12, 2000 (a copy of which is attached to Petitioner's Brief supporting his Petition), the parties were married at Woy Woy, New South Wales, Australia, on May 25, 1991. An Order rendered pursuant to Australia's Family Law Act of 1975 in the Family Court at Woy Woy, New South Wales, Australia, on January 9, 1997, provided that "J.D.D." d/o/b October 13, 1994, and "P.W.D."[2] d/o/b October 16, 1996 **would reside with Respondent,** that Petitioner would enjoy reasonable contact "as agreed between the parties" with the children, and Petitioner and Respondent would "**retain joint responsibility for the care, welfare, and development of the children.**" (Emphasis supplied)[3]

Specific visitation terms were left to the determination of the parties, according to the Orders of the Australian courts. Petitioner represents that he exercised his custodial and visitation rights with the children until 1999. Petitioner's Brief at 2. Respondent first claims that Petitioner did not partake in visitation with the children prior to their exodus from Australia, then conceded that visitation did occur. Respondent's Brief at 1.[4]

Respondent then left Australia with the children. Petitioner alleges that at some point in late 1999, Respondent informed him that she intended to embark on a "working holiday" abroad for six to twelve months and asked Petitioner if he would agree to her taking the children with her, on the condition that all three would return to Australia at the end of the working holiday. Petitioner's Brief at 2. Petitioner claims that, at her urging, he gave his written consent to this arrangement. Id. Respondent alleges that she arrived in the U.S. in early 2000 after telling Petitioner that she was moving the children to the U.S. for an unknown period of time. Respondent's Brief at 1. The parties agree that Petitioner has not seen the children since the end of 1999.

There are no allegations that the children (or either party) faced any sort of

---

1. Australia and the United States are signatories of the Hague Convention of the Civil Aspects of International Child Abduction of 1980.

2. In the interest of protecting the privacy of the children, the Court shall refer to the children by their initials only.

3. The Court finds both Court orders to be authentic pursuant to 42 U.S.C. § 11605 and trustworthy, as both documents bear what appears to be official seals. *See Zarate v. Perez*, 1996 WL 734613, *1 (N.D.Ill.1996).

4. Respondent's Brief references her personal discontent with the manner in which Petitioner visited and otherwise exercised his parental rights to the children, however this Court shall not delve into the apparently acrimonious relationship between Petitioner and Respondent. It is apparent that, whatever complaints Respondent may have had concerning Petitioner's exercise of his parental rights (access, custody) with his children, these were never substantial enough to prompt any official action in any Australian court for relief.

abuse, war famine, disease or violence at the hand of the other party, or any other person in Australia. There are no allegations of any other sort of abuse, neglect, or other harm or persecution that would indicate that Respondent's flight was in the nature of seeking refuge. From all accounts, Respondent's departure with the children was voluntary, in every sense of the word.

Since her arrival in the U.S., Respondent has married John Gause, and she and the children have resided with Mr. Gause in Nappanee, Indiana, since that marriage. Respondent's Brief at 2. Respondent and the children legally reside in the U.S. at this time. During oral argument, Respondent informed this Court of her intention that she and the children become U.S. citizens. Petitioner opposes his children's loss of their Australian citizenship. In addition, Petitioner has alleged that Respondent and Respondent's current husband have issued verbal threats toward Petitioner to the effect that the children would forget their aboriginal heritage and the children would not be seen again. Petitioner's Brief at 2.

There was testimony by Respondent, as well as argument by Petitioner's counsel, that Petitioner has and continues to put forth efforts to maintain some sort of relationship with his children in terms of written and telephonic correspondence. Respondent testified that she enables the children to speak with him by telephone, although Petitioner alleges that recently, due to Respondent's objection that the children speak by telephone to their paternal grandmother (who is in Australia), Respondent has obstructed said telephone contact. Petitioner's Brief at 2. Respondent testified that Petitioner has sent modest amounts of money for the benefit of the children and that he has sent gifts to celebrate the children's birthdays, Christmases, etc.

Respondent testified that the children attend school and church services in Napanee and have made friends. She also testified that the children receive medication for attention deficit disorders.

Petitioner is partially disabled due to a childhood accident. Petitioner's Brief at 2. Although Petitioner has the physical capability to care for the children, his injuries prevent him from traveling from Australia to the U.S. (surely a rigorous journey for a healthy individual.) Moreover, although Petitioner has held employment periodically, he survives on disability benefits and cannot bear the cost of round-trip airline tickets between Indiana and Australia. Id. Respondent's Brief does not address Respondent's cability to provide for the children's transportation to Australia to see Petitioner.

## ANALYSIS

### Relevant Statutes

This Court seeks to engage in a proper construction of the laws involved. Since this Court's ultimate determination in this case is driven primarily by a very important statute stemming from a very important international Convention, the Court sees fit to excerpt relevant portions of ICARA, the Convention, and Australia's Family Law Act:

(a) Findings. The Congress makes the following findings: (1) the international abduction or wrongful retention of children is harmful to their well-being....(4) The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980, establishes legal rights and procedures for the prompt return of children who have wrongfully removed or retained, as well as for securing the exercise of visitation rights. Children who are wrongfully removed or retained within the meaning of the Convention

are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies. The Convention provides a sound treaty framework to help resolve the problem of international abduction and retention of children and will deter such wrongful removals and retentions.

ICARA, 42 U.S.C. § 11601.

(a) Jurisdiction of courts. The Courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention.

(d) Determination of case. The Court in which an action is brought under subsection (b) shall decide the case in accordance with the Convention.

(e) Burdens of proofs. (1) A petitioner in an action brought under subsection (b) of this section shall establish by a preponderance of the evidence—(A) in the case of an action for the return of a child, that the child has been wrongfully removed or retained within the meaning of the Convention; and (B) in the case of an action for arrangements for organizing or securing the effective exercise of rights of access, that the petitioner has such rights. (2) In the case of an action for the return of a child, a respondent who opposes the return of a child has the burden of establishing—(A) by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies; and (B) by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies.[5]

(g) Full faith and credit. Full faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this chapter.

(h) Remedies under Convention no exclusive. The remedies established by the Convention and this chapter shall be in addition to remedies available under other laws or international agreements.

ICARA, 42 U.S.C. § 11603.

(b) Costs incurred in civil actions. (1) Petitioners may be required to bear the costs of legal counsel or advisors, court costs incurred in connection with their petitions, and travel costs for the return of children involved and any accompanying persons, except as provided (in paragraph (3)).(3) Any court ordering the return of a child pursuant to an action brought under § 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal

---

5. Article 12 of the Convention provides, in relevant part: The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year ... shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Article 13 of the Convention provides, in relevant part: Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution, or other body which opposes its return establishes that—(a) the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or (b)there is grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

Article 20 of the Convention provides: The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

ICARA, 42 U.S.C. § 11607.

Barristers in Australia have provided the Court (in the form of attachments to Petitioner's Petition) relevant excerpts of Australia's Family Law Act of 1975 as it encompasses relevant portions of the Convention:

> Each Parent Has Responsibility. (1) Each of the parents of a child who is not 18 has parental responsibility for the child. (2) Subsection (1) has effect despite any changes in the nature of the relationship of the child's parents ...

Family Law Act—Section 61C.

> Parenting Orders and Parental Responsibility. (1) A parenting order confers parental responsibility for a child on a person, but only to the extent to which the order confers on the person duties, powers, responsibilities or authority in relation to the child. (2) A parenting order in relation to a child does not take away or diminish any aspect of the parental responsibility of any person for the child except to the extent (if any): (a) expressly provided for in the order; or (b) necessary to give effect to the order.

Family Law Act—Section 61D.

> Convention on the Civil Aspects of International Child Abduction. (4) for the purposes of the Convention: (a) each of the parents of a child should be regarded as having rights of custody in respect of the child being in force ... (d) subject to any order of a court for the time being in force, a person who has a contact order in relation to a child should be

regarded as having a right of access to the child.

Family Law Act—Section 111B.

Given the nature of this case, the statutes involved demands careful compliance. Surely it was not the intent of the statute to transform this District Court into a court of international domestic relations. *See Friedrich v. Friedrich,* 78 F.3d 1060, 1069 (6th Cir.1996).

Under the statutory framework, Petitioner must establish by a preponderance that he had custody over and a right of access to the children, and that Respondent's removal and/or retention was wrongful in that regard. If Petitioner makes this prima facie showing, the Court must order the children's return to Australia, and leave the explicit custody determinations to an Australian court of competent jurisdiction. This Court may decline to order the children's return only if Respondent can establish one of four (4) narrowly-construed defenses. Since she has raised only two (2) defenses, the Court will address only those that she raised.

### Custody

■ According to Article 3 of the Convention, Petitioner must have been exercising rights of custody at the time of the wrongful removal, or would have but for the wrongful retention. *Zarate v. Perez,* 1996 WL 734613 *1 (N.D.Ill.1996). ICARA requires that Petitioner prove he had a right of access to the children by a preponderance of evidence. ICARA, 42 U.S.C. § 11603(e).

Australia's Family Law Act appears to afford custody to both parties. FLA § 111B. The word "custody" is absent from the Family Court's Order regarding the children. With a preference to err on the side of caution, a precise reading and proper interpretation of the Court's order does not indicate that Respondent was

awarded (sole) custody of the children. To the extent that the wording of the Family Court's Order creates uncertainty as to the issue of custody, the most this Court can do now is order that the children be returned to Australia to permit the Australian courts the opportunity to determine custody.

The wording of the Family Court's Order seems to make more difficult Respondent's showing that Petitioner *was not* exercising custody, as is required by ICARA. The Family Court Order provided that the children reside with Respondent. This is not an explicit grant of custody rights. Under the facts of this case, it seems reasonable that the Order would place the children's residence with their mother because, at the time of its entry in 1997, the children were ages three years and four months, respectively. Given the youthfulness of the children (an infant and a toddler) and Petitioner's permanent, partial disability, it is not surprising that the Court would place their residence with their mother.

But the Family Court's Order does nothing to change Petitioner's custody rights. *Fabri v. Pritikin–Fabri,* 221 F.Supp.2d 859, 870 (N.D.Ill.2001). The Family Court's Order did not explicitly provide that Respondent receive custody. Moreover, at this point, more than six years have passed since the entry of that Order. It is possible that the Family Court may see fit to revise or amend its Order of 1997.[6] However, even if that Order were revised to fix custody with one parent or the other, or provide for joint custody, such an Order would be virtually meaningless because the children presently are not under the physical jurisdiction of the Family Court in New South Wales.

Further, given the age of the children at the time of their departure from Australia, and given Petitioner's disability, this Court cannot find that Petitioner was not exercising custody to the extent of his capabilities at the time of their removal. Moreover, to the extent that Respondent's arguments addressed her dissatisfaction with Petitioner's visits with the children, further support is provided for this Court's conclusion that Petitioner was in fact exercising some nature of custody over the children at the time of their removal.

As to Petitioner's right of access, Petitioner has met his burden of proof (by a preponderance) that he had a right of access by providing the Family Court's Order which explicitly granted him the right of access to the children. The children must be returned to Australia unless Respondent establishes one of four strictly construed defenses set forth in the Convention. *Fabri,* 221 F.Supp.2d at 862.[7]

### Wrongful Removal/retention and Consent/acquiescence

■ Having found that Petitioner has demonstrated by a preponderance that he had, and was exercising, rights of custody over, and access to, the children at the time of their removal, the Court must determine whether the removal and/or retention were wrongful.

Here, the facts indicate that Petitioner had consented to the young children's accompanying Respondent to the U.S. for a six-to-twelve month working holiday, conditioned upon Respondent's promise of their return at the expiration of twelve

---

**6.** This Court has no authority to make a determination regarding who is the better parent; that determination is to be made by the court having jurisdiction over the custody issue. *Fabri,* 221 F.Supp.2d at 862.

**7.** The Court adopts the observance of another District Court facing a similar situation: "The court notes that an order of return does not amount to an order handing the children to the petitioner." *Tabacchi v. Harrison,* 2000 WL 190576 *12 (N.D.Ill.2000).

months. Petitioner indicates he signed a consent bearing out this fact. Petitioner's Brief at 2. The Court does not have a copy of the written consent for review. Defendant claims she "told" that she was moving the children to the U.S. for an unknown period of time. Defendant does not claim that Petitioner consented to this arrangement.

The Court's decision as to which parent to believe is based in large part on a credibility determination, and the Court in this case is inclined to give greater weight to Petitioner's arguments. Under Petitioner's version of the facts, it appears that Respondent engaged in fraud to obtain his consent (telling him that their absence from Australia was for a limited time only, when in fact their departure was intended to be permanent). This fraud would vitiate Petitioner's consent. On the other hand, even if Respondent intended only to remove the children for a maximum of one year, her actions since 2000 have exceeded the scope of Petitioner's consent and she is wrongfully retaining the children in the U.S.

Respondent has raised the defense created by Article 13(a) of the Convention, consent to removal or acquiescence of retention. Respondent must prove this defense by a preponderance. ICARA, 42 U.S.C. § 11603. This Court finds that Respondent has not met her burden. Petitioner's conduct, including seeking counsel and legal assistance in Australia and pursuing this action in the U.S., his efforts to maintain some sort of contact with the children in the U.S., and the expression of his fears (stemming from the threats by Respondent and her husband) that he would not see the children that they would forget their native heritage, demonstrate anything but acquiescence in this regard. Respondent has not presented proof by a preponderance that Defendant consented to the removal or acquiesces in Respondent's retention of this children outside Australia, as required by Article 13(a).

## Grave Risk of Harm

■ Respondent also has raised the defense provided for in Article 13(b) of the Convention, which provides that the Court need not order a child's return if Respondent can show the child would face a grave risk of physical or psychological harm. ICARA requires that Respondent prove this defense by clear and convincing evidence. ICARA, 42 U.S.C. § 11603. Courts have interpreted "grave risk of harm" in this regard to mean either (1) the return of the child puts the child in imminent danger prior to resolution of custody, such as returning the child to a zone of war, famine or disease; or (2) where the case is one of serious abuse or neglect, or extraordinary emotional dependence and the courts in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection. *Tabacchi,* 2000 WL 190576, *12; *Zarate,* 1996 WL 734613, *2, *citing Friedrich,* 78 F.3d at 1069.

■ In this case, Respondent's Brief contains only a conclusory allegation that the children's return possess a grave risk of harm to their psychological well-being. Respondent offers no facts or specific incidents of conduct to support argument. Respondent's personal opinion that the children's return would create and "intolerable situation" is not enough to establish the existence of a grave risk of harm by clear and convincing evidence. More is required of Respondent to establish a successful defense. In this regard, the Court finds that neither of Respondent's proffered defenses defeat Petitioner's prima facie case.

In a highly interconnected world, there remains a place for national sovereignty. This Court is not now called upon to step into the shoes of the Australian Family

Court, which retains domestic jurisdiction over the demonstrated custody issues. The facts and law simply do not permit this Court to decide custody questions which belong to the Family Court in Australia. There are central facts absent here that prohibit invocation of any defenses that could prevent the return of the children. Respondent's presentation is very superficial at best. This Court will not supercede the decision of the Australian courts.

## CONCLUSION

In this regard, the Court hereby GRANTS the Petition. The children shall be returned to Woy Woy, New South Wales, Australia, to provide the Family Court in Australia an opportunity to address whatever custody and visitation controversies that these parties choose to present.

The Court is cognizant of the Sixth Circuit Court of Appeals' admonition:

"Staying the return of a child in an action under the Convention should hardly be a matter of course. The aim of the Convention is to secure prompt return of the child to the correct jurisdiction, and any unnecessary delay renders the subsequent return more difficult for the child, and subsequent adjudication more difficult for the foreign court."

*Friedrich*, 78 F.3d at 1063. However, this Court is aware of the financial burden presented by the prospect of having to purchase airfare for three persons' travel to Australia. The Court also is aware of Petitioner's apparent inability to substantially contribute to the provision of airfare for the children. In light of this Court's findings within this Opinion, it shall be Respondent's responsibility to purchase airfare for the children's flight to Australia. ICARA, 42 U.S.C. § 11607. Petitioner should contribute financially to this pur-

chase. Petitioner is required to act in good faith toward contributing to the financial burden imposed upon Respondent by this Order. Absent good cause shown, Respondent shall return the children to the jurisdiction of the Family Court of New South Wales, Australia, within six months of the date of this Order. Upon motion, Respondent may seek additional time to return the children to Australia for purposes relating to or of meeting the financial burden of the children's plane tickets *only*, and Respondent shall not be granted more than one (1) six-month extension to become fully compliant with this Court Order.

In the meantime, this Court admonishes both parties to act toward each other in good faith, which includes, but is not limited to, the facilitation of regular telephone contact and written correspondence between Petitioner and the children. Furthermore, both of the parties and their privies are ordered to refrain from issuing any threats, verbal or otherwise, to the other, which relate in any way to the parties' children.

Finally, the Court hereby orders that Respondent surrender the passports of the children to the U.S. Marshal in South Bend, Indiana, no later than 12:00 noon on September 30, 2003. The Marshal shall hold the children's passports until Respondent requests the return of the passports upon submitting documented travel arrangements (purchased air fare) to Australia in compliance with this Order. **IT IS SO ORDERED.**